# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JACK READNOUR,　　　　　　　　　　Civil Action No. 1:10-cv-5
　　　Petitioner,


　　　　　　　　　　　　　　　　　　Beckwith, J.
　　vs.　　　　　　　　　　　　　　　Litkovitz, M.J.


WARDEN, HOCKING CORRECTIONAL,　　**REPORT AND**
INSTITUTION,　　　　　　　　　　　**RECOMMENDATION**
　　　Respondent.

Petitioner, an inmate in state custody at the Hocking Correctional Institution in Nelsonville,

Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  This matter

is before the Court on respondent's motion to dismiss filed April 19, 2010, and petitioner's response

in opposition to the motion.  (Docs. 11, 12).

## I. PROCEDURAL HISTORY

### State Trial Proceeding

On June 23, 2008, the Hamilton County, Ohio, grand jury returned an indictment charging

petitioner with four counts of practicing medicine or surgery without certificate in violation of Ohio

Rev. Code § 4731.41 and one count of possessing criminal tools in violation of Ohio Rev. Code §

2923.24(A).  (Doc. 11, Ex. 1).

---

[1]The petition initially was filed with the Southern District of Ohio, Eastern Division.  On January 4, 2010,
the case was transferred to this Court for all further proceedings.  (Doc. 2).  Because petitioner had not signed the
petition, the Court issued an Order on January 28, 2010, directing petitioner to sign his original habeas petition and
return it to the Clerk of Court within thirty days.  (Doc. 3).  Petitioner signed and returned the petition, which was
refiled on February 12, 2010.  (Doc. 7).

Petitioner waived his right to a jury trial. (Doc. 11, Ex. 2). Following a bench trial, the court found petitioner guilty as charged. (Doc. 11, Ex. 3). On April 6, 2009, petitioner was sentenced to an aggregate term of imprisonment of two (2) years, which consisted of concurrent one-year prison terms for the four practice-of-medicine offenses and a consecutive one-year prison term for possessing criminal tools. (Doc. 11, Ex. 3).

## State Direct Appeal

Petitioner filed a timely *pro se* notice of appeal to the Ohio Court of Appeals, First Appellate District, in which he also requested the appointment of appellate counsel and a hearing. (Doc. 11, Ex. 4). It appears from the record that the court initially appointed counsel to represent petitioner on appeal based on a docket entry indicating that a "poverty affidavit had been filed." (Doc. 11, Ex. 5). However, on May 18, 2009, the Court of Appeals issued an order *sua sponte* staying the appointment of counsel pending proof of indigency by petitioner after an examination of the docket revealed "no affidavit of indigency filed in this cause." (Doc. 11, Ex. 5). Petitioner was ordered "to file an affidavit of indigency or other satisfactory evidence of indigency" by June 4, 2009. (Doc. 11, Ex. 5). Petitioner also was advised that "[i]f indigency is not established, the appointment will be set aside and appellant will be granted an extension of time to retain counsel." (Doc. 11, Ex. 5).

Petitioner apparently did not respond to the May 18, 2009 Entry. (*See* Doc. 11, Ex. 6). Therefore, on June 9, 2009, the Court of Appeals entered an order setting aside the appointment of counsel and granting petitioner an extension to July 2, 2009 "to retain and have counsel enter an appearance of record." (Doc. 11, Ex. 6). The Order further provided: "If counsel is not retained by that date, a scheduling order will be issued to the appellant, and it will be assumed that he is representing himself." (Doc. 11, Ex. 6).

Respondent states that no attorney entered an appearance of record in accordance with the appellate court's instructions.  (Doc. 11, p. 3).  On July 31, 2009, the Court of Appeals issued an "Accelerated Calendar Scheduling Order," which provided in pertinent part that the complete record was to be filed by August 8, 2009 and that petitioner's appellate brief was to be filed by September 29, 2009.  (Doc. 11, Ex. 7).

On September 15, 2009, petitioner filed a *pro se* pleading entitled "Recollection Transcript" with the Court of Appeals.  (Doc. 11, Ex. 8).  In the pleading, petitioner provided a summary of the evidence presented at trial, which he averred "accurately convey[ed] the essence of the testimony," although "[s]ome facts will be omitted due to memory lapses."  (Doc. 11, Ex. 8).  On September 30, 2009, the Court of Appeals entered an order *sua sponte* "strik[ing] the recollection transcript for the reasons that it is not in compliance with Appellate Rule 9(C) or (D) and that it has not been served on the prosecutor's office as required by Appellate Rule 13."  (Doc. 11, Ex. 9).  In that Entry, the court also granted "a final extension until November 2, 2009 for appellant to file a transcript of the proceedings, a statement of the evidence under Appellate Rule 9(C), or an agreed statement under Appellate Rule 9(D)."  (Doc. 11, Ex. 9).

On October 5, 2009, petitioner filed a *pro se* pleading with the Court of Appeals entitled "Now Comes the Defendant, Pro Se, Presenting Additional Evidence Not Available During The Trial Proving That The Defendant Was Working Under The Direction Of Dr. Marcellus Gilreath MD, A Doctor Licensed To Practice In The State Of Ohio."  (Doc. 11, Ex. 10).  Petitioner included as part of that pleading an appeal brief, in which he raised in a rambling fashion a number of issues pertaining to the indictment, the testimony of certain witnesses, and the conduct of the police, the trial court, the prosecutor and defense counsel from the time of his arrest through sentencing.  (Doc.

11, Ex. 10, "Now Comes Defendant-Appellant, Pro Se, For Submission Of The Defendant's Appeal

Trial Brief"). Petitioner did not enumerate the "assignments of error" to be considered on direct

appeal. However, at one point in the brief, he did provide the following list of reasons why the case

"should be reconsidered:"

> 1. The indictment was so vague that it made it impossible for the defendant to defend himself and therefore defective on its face.

> 2. Testimony from the four state witnesses required medical knowledge which none of them had, rendering their testimony moot.

> 3. The three bonds required of the defendant ... were unreasonable because of the defendant's background preventing him from preparing his defense[.]  [T]he defendant was accused of violating his bond.  No evidence was shown to prove it.

> 4. A lack of presumption of innocen[c]e throughout the time period from arrest to sentencing.  Based on the court's and prosecutor's statements and actions, there was a presumption of guilt.

> 5. Detective Staples told the defendant that the use of the title MD would never be found illegal.  He was not called by the prosecution to testify to this exculpatory information.

> 6. The [Monfort Heights Family Clinic (MHFC)] was organized and run like thousands of legal medical businesses in the State of Ohio.  MHFC was not practicing medicine without a license.  They had a licensed doctor working for them. Therefore, no crime was committed.

> 7. Throughout the time period from June 2008 until April 8, 2009, the defendant had four attorneys.  All four of these attorneys showed signs of incompetence, and none gave the defendant an adequate defense.  The defendant's trial counsel talked him into a bench trial against his better judgment, knowing the prevailing prejudice over the previous nine months.  She had difficulty deciding whether it should be a bench or jury trial based on superstition.

> 8. The prosecutor accused the defendant of lying while giving his mitigation statement without presenting any evidence.

> 9. The defendant was developing a Christian ministry.  Being wise, the defendant would not spend a million dollars and 15 years developing a Ministry which was illegal, knowing that it was only a matter of time before the ministry would be

destroyed by the justice system.

10. NEW EVIDENCE proving that Dr. Gilreath was directing the work of Dr. Jack Readnour, the defendant, in his work at MHFC.

(*Id.,* pp. 9-10).

On October 14, 2009, the Ohio Court of Appeals entered an order *sua sponte* "strik[ing] the additional evidence for the reason that it is beyond the scope of record as defined in Appellate Rule 9(A), and appellant has an adequate remedy under the Criminal Rules." (Doc. 11, Ex. 11).

Petitioner next filed on October 26, 2009 a *pro se* "Motion To Submit An[] Addition To The Previously Submitted Brief," requesting "the overturning of the Guilty Conviction of the Defendant and the Dismissal of All Charges." (Doc. 11, Ex. 12). Petitioner also apparently filed a "duplicate copy of his 'Recollection Transcript'" at that time with the Ohio Court of Appeals. (Doc. 11, p. 5 & Ex. 13; *see also* Doc. 12, Ex. 20).[2]

On November 5, 2009, the Ohio Court of Appeals filed an "Entry Of Dismissal," which provided in pertinent part:

> This cause came on to be considered upon Court's order of September 30, 2009 granting an extension until November 2, 2009 for appellant to file a transcript of proceedings or a statement in lieu of transcript of proceedings as provided by Appellate Rule 9(C) and (D).

> The Court *sua sponte* dismisses the appeal for failure of the appellant to comply with Appellate Rule 9 and the Court's Order.

> The Court *sua sponte* strikes the 'Recollection Transcript' filed by appellant on October 26, 2009 as not being filed in compliance with Appellate Rule 9.

> The Court overrules appellant's motion to submit an[] addition to the previously submitted brief....

---

[2] It appears from the record that, in addition to refiling the "Recollection Transcript" with the state appellate court on October 26, 2009, petitioner filed a "Motion For Certification Of Recollection Transcript" with the trial court that same date. (*See* Doc. 12, Ex. 20).

(Doc. 11, Ex. 13).

### Delayed Appeal To Ohio Supreme Court

Petitioner did not perfect a timely appeal to the Ohio Supreme Court. Instead, it appears from the record that he filed an application for *in forma pauperis* status with the Ohio Supreme Court in November 2009 after the Ohio Court of Appeals dismissed the appeal. (*See* Doc. 11, Ex. 15, Affidavit of Jack Readnour; Doc. 12, p. 1). However, the documents submitted for filing at that time were returned to petitioner by letter dated December 9, 2009 from a deputy clerk at the Ohio Supreme Court Clerk's Office. (*See* Doc. 11, Ex. 15). The letter provided:

> The enclosed documents were not filed because, on their own, they do not meet the requirements for filing a new case and do not bear a Supreme Court of Ohio case number. They also do not appear to relate to a pending Supreme Court of Ohio case.
>
> For information on how to file an appeal from a court of appeals decision, see Rule II, Rule III, Rule VIII, Rule XIV, and XV of the Rules of Practice of the Supreme Court of Ohio.... A copy of the Rules of Practice is on file with your institution's library. A copy of our Frequently Asked Questions is enclosed.
>
> Other than an affidavit of indigency, the Clerk's Office does not offer forms for initiating new cases. The Office of the Ohio Public Defender, however, may be able to provide you with a pro se packet containing forms for filing an appeal which were prepared by that office. The address for the Office of the Ohio Public Defender is 250 East Broad Street, Suite 1400, Columbus, Ohio 43215.

(Doc. 11, Ex. 15, attachment).

Petitioner states that he next attempted to perfect a timely appeal with the Ohio Supreme Court by submitting only a notice of appeal for filing before the 45-day appeal period expired on December 20, 2009. (Doc. 11, Ex. 15, Affidavit of Jack Readnour; Doc. 12, p. 1). However, the documents submitted to initiate a timely appeal were returned to petitioner by letter dated December 21, 2009 from a deputy clerk at the Ohio Supreme Court Clerk's Office. (Doc. 11, Ex. 15,

6

attachment).  The December 21, 2009 letter provided:

> The enclosed documents were not filed and are being returned to you because they
> do not meet the requirements of the Rules of Practice of the Supreme Court of Ohio.
> The specific areas of noncompliance and relevant rules are as follows:
>
> > You did not submit the $100.00 docket fee required by statute and
> > Rule XV, Section 1, for instituting an appeal in the Supreme Court.
> > If applicable, you may submit a notarized affidavit of indigency in
> > lieu of the fee.
>
> Please refer to the copy of the court's rules on file with your institution's library for
> additional information.  Specifically, if your case involves a felony you will need to
> review the provision for filing a delayed appeal in Rule II, Section 2(A)(4).

(Doc. 11, Ex. 15, attachment).

It appears that petitioner next unsuccessfully attempted to file a motion for delayed appeal

with the Ohio Supreme Court on January 4, 2010, because it was stamped as "received" by the Clerk

of Court on that date. (*See* Doc. 11, Ex. 15).  Petitioner's notice of appeal and motion for delayed

appeal to the Ohio Supreme Court ultimately were filed with that court on January 21, 2010.  (Doc.

11, Exs. 14-15).

In the motion for delayed appeal, petitioner explained that he was "delinquent" as a result

of his prior unsuccessful attempts to perfect a timely appeal.  He stated that after his indigency

application was returned to him on his first attempt to initiate a timely appeal, he believed that

before he could submit an indigency application, he had to first separately file a notice of appeal.

(Doc. 11, Ex. 15, Affidavit of Jack Readnour).  Petitioner contended that because "[t]his process

consumed the 45 day appeal period," he should be granted a delayed appeal. (Doc. 11, Ex. 15,

Affidavit of Jack Readnour).

On March 10, 2010, the Ohio Supreme Court denied petitioner's motion for delayed appeal

and dismissed the matter without opinion. (Doc. 11, Ex. 16).

**Federal Habeas Corpus**

The instant federal habeas corpus action commenced on December 31, 2009.  (Docs. 1, 3).

In the signed petition, which was refiled in February 2010, petitioner alleges three grounds for relief:

> **Ground One:**  Amendment VIII, U.S. Constitution; Excessive bail shall not be required.
>
> **Supporting Facts:**  The crime was nonviolent.  The defendant was 65 years old, father of six children, 29 grandchildren, holder of 4 university degrees including Doctor of Medicine.  Worked as an engineer for 36 years for GE Aircraft Engines.  Never failed to appear in court.  Devout Christian.  Never been indicted for a crime (previously).  Should have been given an OR bond.  A model citizen.
>
> **Ground Two:**  Unequal protection; Article IV U.S. Constitution.
>
> **Supporting Facts:**  I was operating a medical clinic, providing medical care to mainly poor patients (charity clinic).  I had working for me a doctor licensed in the State of Ohio who delegated to me the operation of the clinic and who performed all work required of a licensed doctor.  I am an unlicensed doctor not requiring a license.  I was charged with practicing medicine without a license, which is untrue.
>
> **Ground Three:**  Indictment void on the face.
>
> **Supporting Facts:**  Indictment was 5 counts: 1) practicing medicine without a license[;] 2) office space for a practice[;] 3) advertising practice[;] 4) medical equipment[;] 5) possession of criminal tools (using a computer).  During the trial the prosecution raised the issues of using the title MD (which I am) and not having a licensed doctor on the premises.  Both are void on the face.

(Doc. 7, pp. 6, 8, 9).

Respondent has filed a motion to dismiss the petition.  (Doc. 11).  Respondent contends in the motion that the petition is subject to dismissal with prejudice because petitioner has waived his claims for relief due to his procedural defaults on both direct appeal to the Ohio Court of Appeals and delayed appeal to the Ohio Supreme Court.  (Doc. 11).  Petitioner opposes the motion to dismiss.  (Doc. 12).

8

## II. RESPONDENT'S MOTION TO DISMISS (DOC. 11) SHOULD BE GRANTED

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied,* 474 U.S. 831 (1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the federal habeas court may be barred from considering an issue of federal law from a judgment of a state court if the judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that

failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996). The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). In *Harris,* the Supreme Court noted, however, that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief. *Harris,* 489 U.S.

at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* ... assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the state courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied. *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743, 751 (6th Cir.), *cert. denied,* 531 U.S. 940 (2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) *(per curiam)*; *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992), *cert. denied,* 507 U.S. 932 (1993). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000), *cert. denied,* 531 U.S. 1082 (2001).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued in the motion to dismiss (Doc. 11), it appears that

11

petitioner procedurally defaulted all his claims for federal habeas relief in the state courts both on direct appeal to the Ohio Court of Appeals and on further appeal to the state's highest court.

First, petitioner committed a procedural default at the intermediate appellate level by failing to comply with Ohio R. App. P. 9, which governs the transmission of the record on appeal. Ohio R. App. P. 9(B) makes it clear that it is the duty of the appellant to ensure that the requisite record of the trial proceedings is filed for appeal purposes; the rule provides in pertinent part:

> At the time of the filing of the notice of appeal, *the appellant*, in writing, shall order from the reporter a complete transcript or a transcript of the parts of the proceedings not already on file as the appellant considers necessary for inclusion in the record and file a copy of the order with the clerk.... If there is no officially appointed reporter, App. R. 9(C) or 9(D) may be utilized....

> Unless the entire transcript is to be included, *the appellant*, with the notice of appeal, shall file with the clerk of the trial court and serve on the appellee a description of the parts of the transcript that the appellant intends to include in the record, a statement that no transcript is necessary, or a statement that a statement pursuant to either App. R. 9(C) or 9(D) will be submitted, and a statement of the assignments of error the appellant intends to present on the appeal....

(Emphasis added).

Under Ohio R. App. P. 9(C), "[i]f no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable," the appellant is permitted to "prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." The appellant must serve his Rule 9(C) statement on the appellee "no later than twenty days prior to the transmission of the record pursuant to App. R. 10,"[3] so that the appellee has an opportunity to serve objections or propose amendments to the statement. Ohio R. App. P. 9(C).

---

[3] Ohio R. App. P. 10(A) provides that the "record on appeal, including the transcript ..., shall be submitted to the clerk of the court of appeals when the record is complete for purposes of appeal, or when forty days, which is reduced to twenty days for an accelerated calendar case, have elapsed after the filing of the notice of appeal and no order extending time has been granted."

The "statement and any objections or proposed amendments" must be submitted to the trial court for settlement and approval. *Id.* Rule 9(C) further provides: "The trial court shall act prior to the time for transmission of the record pursuant to App. R. 10, and, as settled and approved, the statement shall be included by the clerk of the trial court in the record on appeal." *Id.*

Under Ohio R. App. P. 9(D), the parties are permitted to submit an agreed statement of the case as the record on appeal, which must be prepared and signed "no later than ten days prior to the time for transmission of the record pursuant to App. R. 10." The statement submitted by the parties must show "how the issues presented by the appeal arose and were decided in the trial court and set[] forth only so many of the facts averred and proved or sought to be proved as are essential to a decision of the issues presented." Ohio R. App. P. 9(D). "If the statement conforms to the truth, it, together with additions as the trial court may consider necessary to present fully the issues raised by the appeal, shall be approved by the trial court prior to the time for transmission of the record pursuant to App. R. 10 and shall then be certified to the court of appeals as the record on appeal and transmitted to the court of appeals by the clerk of the trial court." *Id.*

Here, petitioner did not order or file a transcript of the trial proceedings; nor did petitioner comply with the requirements of Ohio R. App. P. 9(B) by filing and serving on the State a "statement that no transcript [was] necessary, or a statement that a statement pursuant to either App. R. 9(C) or 9(D) [would] be submitted." *See* Ohio R. App. P. 9(B). Instead, citing Ohio R. App. P. 9(C), petitioner filed a "Recollection Transcript" with the Ohio Court of Appeals on September 15, 2009, *after* the August 8, 2009 deadline had passed for filing the record on appeal in accordance with the July 31, 2009 "Accelerated Calendar Scheduling Order." (*See* Doc. 11, Exs. 7-8; Doc. 12, Ex. 19). As the Ohio Court of Appeals found in striking the pleading, the "Recollection Transcript"

13

failed to satisfy the requirements set forth in Ohio R. App. P. 9(C) or 9(D).  (*See* Doc. 11, Ex. 9).

As the court pointed out, the pleading was not served on the appellee for input either as "objections

and proposed amendments" under Rule 9(C) or for the purpose of obtaining an "agreed statement"

of the parties "as the record on appeal" under Rule 9(D).  Moreover, the pleading was not submitted

"prior to the time for transmission of the record" or to the trial court for its settlement and approval

of the document for inclusion in the record on appeal.

The Ohio Court of Appeals granted petitioner another opportunity to comply with its

procedural rules by extending the deadline to November 2, 2009 "for appellant to file a transcript

of the proceedings, a statement of the evidence under Appellate Rule 9(C), or an agreed statement

under Appellate Rule 9(D)."  (Doc. 11, Ex. 9).  However, petitioner again failed to comply with the

requirements clearly set out in Ohio R. App. P. 9 when he (1) attempted to submit "additional

evidence not available during the trial" in a pleading filed on October 5, 2009; and (2) resubmitted

his previously stricken "Recollection Transcript" with the state appellate court on October 26, 2009,

in conjunction with a motion filed the same date with the trial court for certification of the

"Recollection Transcript."

On October 14, 2009, the Ohio Court of Appeals struck petitioner's "additional evidence"

because it was "beyond the scope of the record" subject to review on direct appeal.  (Doc. 11, Ex.

11).  Thereafter, on November 5, 2009, the Ohio Court of Appeals clearly and expressly enforced

the procedural bar to review when it entered its final Order *sua sponte* striking the "Recollection

Transcript" that had been refiled on October 26, 2009 "as not being filed in compliance with

Appellate Rule 9" and *sua sponte* dismissing the appeal "for failure of the appellant to comply with

Appellate Rule 9 and the Court's Order."  (*See* Doc. 11, Ex. 13).

14

The court's dismissal of the appeal for failure to comply with a court order and Ohio's appellate procedural rules was based on an "adequate" state ground involving a "firmly established and regularly followed state practice." *Cf. Sommers v. White Star Farms,* No. CA-5784, 1982 WL 3028 (Ohio Ct. App. 5 Dist. June 16, 1982) (unpublished) (holding that because the appellant failed to notify the appellee that only a partial transcript was being ordered or of the assignments of error he intended to prosecute on appeal, as required by Ohio R. App. P. 9(B), the appeal was subject to dismissal "for want of prosecution"); *see also Baines v. Harwood,* 622 N.E.2d 372, 373 (Ohio Ct. App. 12 Dist. 1993) (involving dismissal of appeal based on the appellant's failure to file a brief in compliance with the court's scheduling order); *Crow v. Fisher,* No. CA 86-05-008, 1986 WL 11409 (Ohio Ct. App. 12 Dist. Sept. 29, 1986) (*per curiam*) (unpublished) (striking appellate brief that failed to comply with Ohio R. App. P. 16 and dismissing appeal).

Therefore, petitioner's procedural default on direct appeal, which was relied on by the Ohio Court of Appeals in dismissing the appeal, may constitute a bar to habeas corpus review of petitioner's claims.

In any event, petitioner committed a second procedural default by failing to file a timely appeal to the Ohio Supreme Court after the Court of Appeals *sua sponte* dismissed petitioner's appeal on state procedural grounds. Although petitioner did attempt to perfect an appeal to the state supreme court by filing a motion for delayed appeal with that court, the Ohio Supreme Court refused to allow the appeal by summarily denying the motion. (Doc. 11, Ex. 16).

In *Bonilla,* the Sixth Circuit ruled that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar federal court review of a habeas corpus petition. *Bonilla v. Hurley,* 370 F.3d 494,

497(6th Cir.) (*per curiam*), *cert. denied,* 543 U.S. 989 (2004); *see generally Harris,* 489 U.S. at 260-

62. In so holding, the Sixth Circuit reasoned that "the applicable Ohio [Supreme Court] rules

indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the

merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein). The court

explained:

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the
> date of entry of the judgment being appealed and adequate reasons for the delay."
> Ohio Sup.Ct. R. II, Section 2(A)(4)(a). In addition, the motion must be accompanied
> by a supporting affidavit and a "copy of the decision being appealed." *Id.* A motion
> for a delayed appeal is not required to contain the actual claims and supporting
> arguments sought to be presented on appeal. *Id.* Instead, only when "the Supreme
> Court grants a motion for delayed appeal," is the appellant required to "file a
> memorandum in support of jurisdiction." Ohio Sup.Ct. R. II, Section 2(A)(4)(c).
> Thus, the applicable Ohio court rules indicate that the denial of a motion for a
> delayed appeal is a procedural ruling, not a ruling on the merits.

*Bonilla,* 370 F.3d at 497.

As in *Bonilla*, petitioner here failed to file a timely notice of appeal with the Ohio Supreme

Court and his motion for leave to file a delayed appeal was denied by that court apparently because

he failed to demonstrate adequate reasons for his delay in filing. *See id.* In this case, as in *Bonilla,*

the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested relief."

*Id.* In such circumstances, it must be assumed that the state supreme court enforced the applicable

procedural bar. *Id.* (citing *Sparkman,* 94 F.3d at 203). Because petitioner thus failed to comply with

a state procedural rule, which was relied on by the Ohio Supreme Court in denying his motion for

delayed appeal, this Court's review of petitioner's claims is barred under *Bonilla* unless petitioner

"can demonstrate cause for the default and actual prejudice ... or demonstrate that failure to consider

the claims will result in a fundamental miscarriage of justice.'" *Id.* (quoting *Coleman,* 501 U.S. at

750).

16

Petitioner has not provided any explanation for his procedural default on direct appeal to the Ohio Court of Appeals other than generally stating that he was a *pro se* litigant who "cannot be expected to comply even with clear instructions, let alone vague and wordy court rules." (*See* Doc. 12, pp. 2-3). He has argued as "cause" for his procedural default to the Ohio Supreme Court that he tried twice to initiate a timely appeal, but was placed in a "catch 22" situation because he was not permitted to file an indigency affidavit without first filing a notice of appeal and then was not allowed to file an appeal without first paying the filing fee or obtaining *in forma pauperis* status. (*See* Doc. 12). However, Rule XV, Section 1, of the Rules of Practice of the Supreme Court of Ohio provides that "[a]n affidavit of indigency may be filed in lieu of docket fees or security deposits" when an appeal is filed with the state supreme court. Therefore, contrary to petitioner's contention, Ohio Supreme Court's filing requirements do not create a "catch 22" situation. If petitioner had included an affidavit of indigency with the notice of appeal submitted for filing prior to the expiration of the 45-day appeal period, he would have been allowed to perfect the appeal.[4]

Moreover, petitioner is unable to prevail on any argument that his indigent *pro se* status or lack of knowledge of the law constitutes "cause" sufficient to excuse both his failure to perfect a timely appeal to the Ohio Supreme Court and his failure to comply with Ohio R. App. P. 9, as well as the Ohio Court of Appeals' specific orders, regarding the record to be provided on direct appeal. In *Bonilla,* the Sixth Circuit rejected similar arguments, holding that the petitioner's *pro se* status, limited access to the prison law library, and ignorance of the law and procedural requirements for

---

[4]*Cf. Simms v. Acevedo,* 595 F.3d 774, 779 (7th Cir. 2010) (holding in a case involving a statute-of-limitations bar to review that the petitioner's state habeas petition submitted without the inclusion of trust fund information was not "properly filed" under state law, "regardless of whether the [state] statute commands the clerk in a situation like [the petitioner's] to file the petition and then ask for the required trust fund information, or whether the statute allows the clerk to return the petition without filing it and then file it when the proper trust fund information is included"), *petition for cert. filed,* No. 09-11099 (U.S. May 17, 2010).

filing a timely notice of appeal were insufficient to establish cause. *Bonilla,* 370 F.3d at 498; *see also Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995). Petitioner has not cited or provided any evidence demonstrating that he lacked the mental capacity to comply with filing requirements or court orders as an indigent *pro se* litigant. Indeed, he has alleged in Ground One that he holds four university degrees, including a medical degree, and worked as an engineer for 36 years for GE Aircraft Engines. (Doc. 7, p. 6). These allegations, if true, suggest that petitioner had the ability to conduct research and obtain the knowledge necessary to understand and comply with the state appellate courts' filing requirements.

Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered, or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498.

To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327-28. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual

18

innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998); *see also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup,* 513 U.S. at 321.

Petitioner's conclusory, unsubstantiated allegations that "no crime was committed" because he was operating a charitable medical clinic under the direction of a licensed medical doctor do not suffice to establish a credible claim of actual innocence under the *Schlup* standard. Petitioner has not explained why the purportedly exculpatory "new evidence" regarding Dr. Marcellus Gilreath's credentials, position and role at the clinic was not available to him at the time of his trial for the purpose of presenting a defense. In any event, the only arguably "new evidence" that petitioner has submitted in support of this claim is a letter dated March 18, 2009 from Dr. Gilreath to petitioner's wife regarding a civil malpractice action that had been brought against both Dr. Gilreath and petitioner. (*See* Doc. 11, Ex. 10). Dr. Gilreath stated in the letter only that it was his understanding that he was "providing consultative backup to [petitioner] and that both my actions and that of the corporation were covered by liability insurance." That one statement does not persuade the undersigned that "no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt" in light of all the evidence. *Schlup*, 513 U.S. at 329. Therefore, petitioner has not demonstrated his procedural defaults should be excused under the "fundamental miscarriage of justice" exception.

Accordingly, in sum, the Court concludes that petitioner has procedurally defaulted his claims for relief by (1) failing to comply with Ohio's appellate procedural rules and the Ohio Court of Appeals' orders regarding the transmission of the record on appeal, which resulted in the *sua sponte* dismissal of his appeal by the Ohio Court of Appeals; and (2) failing to file a timely appeal

19

to the Ohio Supreme Court from the Ohio Court of Appeals' dismissal entry. Because petitioner has not demonstrated "cause" for his procedural defaults or that a fundamental miscarriage of justice will occur if his claims are not considered by this Court, the undersigned concludes that petitioner has waived his claims for federal habeas relief. Therefore, it is **RECOMMENDED** that respondent's motion to dismiss (Doc. 11) be **GRANTED**, and petitioner's petition for writ of habeas corpus (Doc. 7), be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 11) be **GRANTED**, and petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was signed and refiled (Doc. 7), be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to petitioner's claims for relief, which this Court has concluded are waived and thus barred from review on a procedural ground, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).[5]

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a);

---

[5]Because this Court finds that the first prong of the *Slack* standard has not been met in this case, it need not address the second prong of *Slack* as to whether or not "jurists of reason" would find it debatable whether petitioner has stated a viable constitutional claim in any of his grounds for relief. *See Slack*, 529 U.S. at 484.

20

*Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 1/4/2011

cbc

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JACK READNOUR,                                     Civil Action No. 1:10-cv-5
    Petitioner,

                                         Beckwith, J.
vs                                                 Litkovitz, M.J.

WARDEN, HOCKING CORRECTIONAL
INSTITUTION,
    Respondent.

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature

X  ☑ Agent  ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Jack Readnour 605054
Hocking Corr. Facility
PO Box 59
Nelsonville, OH 45764

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*   ☐ Yes

2. Article Number
*(Transfer from service label)*    7002 3150 0000 8389 0842

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

1:10 cv 5   (Doc. 15)